OPINION OF THE COURT
Memorandum.
The order of the Appellate Term should be reversed, and the case remitted to that court for a determination of the facts. (CPL 470.25, subd 2, par [d]; 470.40, subd 2, par [b].)
This appeal concerns a traffic ordinance enacted by the Village of Scarsdale, declaring Walworth Avenue a one-way northbound street for a 50-foot segment beginning at the Scarsdale border. Neither the beginning nor the end of the one-way segment is at an intersection. The restriction applies during the hours of 4:00 p.m. to 6:00 p.m. on weekdays, and it does not apply to Westchester County buses. Respondent, a newspaper reporter, was ticketed after traveling in the wrong direction during the prohibited hours and was convicted of violating the ordinance, the validity of which he questions. The Village Court upheld the ordinance, but the Appellate Term reversed, finding it an unreasonable traffic regulation.
Although the State is responsible for regulating the streets, it has delegated much of this power to municipalities. A village is empowered to designate “any highway or any separate roadway thereof for one-way traffic” (Vehicle and Traffic Law, § 1640, subd [a], par 4), and it may enact such additional reasonable traffic laws as local conditions may require. (Vehicle and Traffic Law, § 1640, subd [a], par 16.) A traffic ordinance established by a municipality will be upheld so long as it is reasonable and nondiscriminatory. (7 McQuillin, Municipal Corporations [3d rev ed], § 24.618.)
Where an ordinance limits through traffic, factors to be weighed in determining its validity include the availabil *954 ity of convenient alternate routes, any discriminatory effect, and the necessity for the regulation in relation to traffic conditions. (People v Grant, 306 NY 258; Jones Beach Blvd. Estate v Moses, 268 NY 362; Mobil Oil Corp. v Village of Roslyn Harbor, 69 Misc 2d 79 [Meyer, J.].) For example, in Grant, upon which defendant relies heavily, we sustained a challenge to an ordinance of the Town of North Hempstead which prohibited through traffic in a 10-block area and was designed to reserve the use of the streets to local residents. The ordinance in Grant banned all travel through the area, in whatever direction, and wherever destined. (306 NY, at p 264.) The Scarsdale ordinance, by contrast, does not impose a blanket prohibition. It forecloses only southbound traffic on one street for two hours each weekday.
On the present record, the Appellate Term was not justified in striking down the regulation. Defendant’s challenge consisted of little more than citing People v Grant. No motion was made to dismiss the information on grounds of invalidity. (CPL 170.30, subd 1, par [a]; 170.35, subd 1, par [c].) Defendant did not show that alternate routes were unavailable or that these routes, if available, were inadequate. No mention was made of undue inconvenience imposed on southbound travelers on Walworth Avenue. Nor did defendant allege, much less prove, that the ordinance was designed to favor residents rather than to eliminate a dangerous traffic condition. He established no discriminatory effect.* The only clue to the purpose and effect of the ordinance is in the decision of the Village Justice, who took judicial notice that the ordinance was enacted to address “an extremely difficult traffic situation” on Walworth Avenue resulting from the closing of one or more entrances to the southbound Bronx River Parkway, and that the ordi *955 nance succeeded in eliminating the traffic danger. He further noted the existence of many alternate routes for entry to the parkway. These considerations would weigh in favor of upholding the ordinance.
The Appellate Term found, as an additional basis for the result reached, that the “One Way” and “Do Not Enter” signs were positioned between intersections, necessitating U-turns. Subdivision (b) of section 1110 of the Vehicle and Traffic Law prohibits the enforcement of an ordinance if a required sign is not in a proper position or sufficiently legible to be seen by an ordinarily observant person. But defendant did not question the positioning of the signs. Consequently, there is no proof in this record of the actual distance between the signs and the intersections, or of the ability of an ordinarily observant person to see the signs before proceeding past the intersections.
While we do not sanction the unusual measure of establishing a one-way segment within a block, the record before us is inadequate to declare the ordinance invalid.

 The dissent concludes that the ordinance is not reasonably justified by necessity or public safety, and that it discriminates against nonresidents of the Village of Scarsdale. These would certainly have been grounds for invalidating the ordinance, had there been evidence to support them. The fact that county buses are permitted to travel south on Walworth Avenue fails to establish discrimination and may even support a conclusion that the ordinance operates not to favor Scarsdale residents or exclude the public but to eliminate undue congestion and traffic danger. Similarly, no discrimination in favor of Scarsdale residents was shown. The testimony at best indicated that in isolated cases a local resident coming out of one of the two or three driveways within the 50-foot segment was permitted to travel south — hardly a foundation for the legal conclusion that the ordinance discriminated against nonresidents of the Village of Scarsdale.